## STOKES *v.* THE STATE OF GEORGIA.

1. An indictment charging that, in a specified county and on a certain date, the defendant feloniously and burglariously broke and entered, with intent to steal therefrom, the depot of a named railroad company, a corporation of this State, the same being its place of business and a house wherein valuable goods and wares were stored, substantially followed the code, §§4628, 4386, and authorized proof that the railroad company was in possession of the goods stolen, and that they were taken from its depot, and that afterwards defendant was found in possession of them.
2. The breaking and entering of the house of a bailee of goods, with intent to steal anything therein, is a burglary.
3. The intent with which the defendant broke and entered the house was properly shown by proof that he did so and took away certain articles therein.
4. Proof of confessions by the defendant of the larceny of certain goods from the depot, was not open to the objection that there was no allegation of the larceny of any particular goods, or of their ownership.
5. A ground for new trial of error in the court's charge on the subject of confessions, without specifying wherein the error consists, cannot be considered.
6. Refusal to arrest a judgment is not a ground for new trial, but must be assigned as error in the bill of exceptions. The motion in arrest here goes to the sufficiency of the indictment, which has been held good.
7. The verdict is in accordance with law and evidence.

January 15, 1890.

Burglary.  Criminal law.  Evidence.  Indictment. Practice.  Judgments.  Verdict.  Before Judge HARRIS. Coweta superior court.  March term, 1889.

Indictment for burglary.  The testimony for the State showed as follows:  On the morning of the 15th or 16th of January, 1889, the fastening of a door of the Atlanta & West Point Railroad Company in Grantville, Coweta county, was found broken or knocked out of the door

and the door open. This door had been closed and fastened on the previous night by a servant of that company, who was the last to leave the depot. In one room were indications that a lantern had been burning there; cases of hats were found broken open and hats gone therefrom; some flour was missed; and other articles were scattered. A coat and vest belonging to Garmany, one of the company's servants, and which had been hanging in the office, was gone. The hats were worth two dollars each, and the clothes several dollars. The defendant was at the depot during the day following the burglary, trucking cotton for one Collins. On January 18th, defendant arrived at the house of one Lee, in Heard county, twelve miles from Grantville, and inquired the way to a named place in Alabama. Lee offered to hire him; he replied that he had a partner, and would hire if his partner would, and that they were on their way to Alabama, and he (defendant) did not care whether he went or not. Lee offered to give him his supper and breakfast if he would stay over night, which defendant did. The next morning his partner did not come, and he was willing to hire. Lee sent him to a mill a short distance away, and then opened a bundle he had brought, finding four new hats, a coat and vest and some cigarettes. He then followed defendant to the mill and told him that he (witness) had heard that the depot at Grantville had been burglarized and defendant was suspicioned and he might consider himself under arrest, and witness was going to carry him back. Defendant refused to be arrested, and fought; but after a struggle, Lee secured him, put him in a buggy and drove to Grantville, taking the goods found in the bundle. For some distance of the drive, defendant said but little, but after arriving at a certain point in the road near a pine thicket, he said there was where he left his goods and waited for Tom Spratling

to come on, and that they belonged to Spratling. He had not previously said whose they were. He further stated that Tom did not come on, and he went and hid the goods in the thicket, went back to hunt Tom, could not find him and had not seen him since. After going some distance further, defendant said there was where he received the bundle of goods, that Tom Spratling became tired and asked him to tote them for him. When nearly to Grantville, witness asked defendant whose coat and vest that was, and defendant replied that it was Mr. Garmany's; and on being asked how he came into possession of Garmany's coat and vest, he said, after being silent a while, that he found them in the bundle of hats; also, in reply to further question, that he was trying to sell them to get him some shoes. On approaching Grantville, he said he would rather die than go back there in that fix, that his people were counted respectable, and that his mother would faint if she were to see him; he asked that he be carried not directly through town but round by another route, and that the hat he was wearing be taken from his head, as it was too tight and hurt him, and felt as if it would blow off. This was a new dove-colored hat. Garmany identified the coat and vest as his own, which had been hanging in the office, and the hats as like those remaining in the broken cases. A large quantity of valuable articles of merchandise were stored in the depot, consigned to various persons through the railroad company. Defendant sold the coat and vest to Wash. Bridges for $1.60 on the evening he arrived at Lee's place, and offered to sell a brown hat to another witness, who testified that the hat exhibited to him by counsel was, if not the same, exactly like the one defendant offered to sell. Defendant lived in Grantville at the time the burglary occurred, and was probably familiar with the depot and its surroundings.

Defendant's testimony tended to show as follows: He was at the house of one of his witnesses all the night of the burglary; went there just before dark, and was seen there up to midnight, and then he went into the kitchen (where others were sleeping) and went to bed. He was seen at the same house on the following morning. There was a frolic, dancing, etc. at this house on the night in question. One or two evenings after the burglary occurred, he was standing in the door of his mother's house, when two of his witnesses passed by on their way to Grantville. He joined them, and after going from half a mile to a mile, the three were met by Tom Spratling, who had a bundle. Tom asked if any of them wanted to trade, and told defendant he had been looking for him. Two of the witnesses said they had no money, and stepped aside and sat down on the railroad track, while defendant and Spratling engaged in conversation not heard by the others. They however heard the jingling of money and saw defendant pay it to Spratling, who delivered the bundle in exchange for it. This bundle contained hats. The witnesses and defendant separated at the forks of the road some distance further. The defendant's statement corresponded with this testimony; and he added that his mother gave him the money with which he bought the things, and that he was going to Heard county to see his uncle. In rebuttal, there was testimony for the State to show that, before and at the preliminary trial, he made statements as to how he came into possession of the goods, inconsistent with his present account; also that, while in the calaboose at Grantville, he was told that they had him in there and to tell the truth, to which he replied that Wm. Tatum left the depot doors next to the track open, and went in, together with Gus. Martin, and got the goods, and afterwards Gus. Martin gave them to him (defendant), and they went on to the house where the frolic occurred.

The decision states the rest of the case. In connection with the second, third and fourth divisions, it may be remarked that the fifth ground for new trial complained of the      admission of proof of the ownership of the goods and of Garmany's ownership of part of them, etc., the indictment containing no allegation authorizing such proof; that the error specified in the sixth ground was, because the indictment alleged no larceny or felony; and that the seventh ground assigned error in allowing proof of confessions by defendant of the larceny of certain goods from the depot, there being no allegation in the indictment of the larceny of any particular goods or of their ownership.

P. F. SMITH, for plaintiff in error.

T. A. ATKINSON, solicitor-general, for the State.

BLANDFORD, Justice.

The plaintiff in error was found guilty of the offence of burglary; the bill of indictment charging that in the county of Coweta, on the 16th of January, 1889, he entered into the depot at Grantville in said county, the said depot being a place of business of the Atlanta & West Point Railroad Company, a corporation of this State, and the same being a house wherein valuable goods and wares were stored, and that he feloniously and burglariously did break and enter the same with intent then and there to steal therefrom. He made a motion for a new trial, which was overruled, and he excepted.

1. Besides the general grounds in the motion, it was assigned as error that the court permitted State's counsel, over objection by counsel for the accused, to prove that the Atlanta & West Point Railroad Company was in possession of the goods stolen, and that said goods were taken from the depot of the Atlanta & West Point Railroad Company, the indictment containing no alle-

gation that any goods were stolen, or that any larceny or felony was committed in the said depot. The indictment, in our opinion, substantially follows the statute.   Code, §§4628, 4386.

The next assignment of error is, that the court allowed the State to prove that the defendant was found in possession of certain hats and other articles, and then to prove that said articles were taken from the depot on the night of the alleged burglary, there being no allegation in the indictment that the same were taken or stolen.   What we have just said as to the preceding ground applies also to this.

2. As to the 5th ground, it would make no difference to whom the goods really belonged; if they were in the railroad company's depot, they were in the possession of the  railroad company as bailee, and the breaking and entering of its house with intent to steal anything therein is a burglary according to the definition of our code.

3. In the 6th ground it is alleged that the court erred in allowing the State to prove the larceny of certain goods, to show the intent with which the defendant broke and entered the house.   We cannot see upon what ground this assignment of error can rest.   If it is proved that he broke and entered the house, and took away certain articles therefrom with intent to steal them, it is quite manifest that the breaking and entering was with the intent to commit larceny.

4. The 7th ground may be disposed of by what has already been said.

5. The 8th ground assigns as error the charge of the court on the subject of confession, without specifying wherein the error consists.   So we cannot consider this assignment.

6. The 9th ground is that the court erred in overruling the motion in arrest of judgment, on the ground stated in the motion.   The bill of exceptions says

nothing as to the motion in arrest of judgment; we find that only in the transcript of the record sent up by the clerk. It has been held by this court that the refusal to arrest a judgment cannot be made the ground of a motion for a new trial. Such refusal should be excepted to in the bill of exceptions. *Watson* v. *The State*, 64 *Ga.* 61. But if it had been so excepted to, we would hold that there is nothing in this ground of error. As already stated, the bill of indictment is sufficient under our code.

7. This disposes of all the assignments of error. We think there is sufficient evidence to have authorized the verdict, and that the verdict is in accordance both with the law and the evidence. . *Judgment affirmed.*